In the

# UNITED STATES COURT OF APPEALS
for the Seventh Circuit

## No. 21-2140

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

v.

**DEMETRIUS HARVEY,**

**Defendant-Appellant.**

On Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 18 CR 482 — Virginia M. Kendall, *Judge*.

## BRIEF OF THE UNITED STATES

JOHN R. LAUSCH, JR.
United States Attorney
 for the Northern District of Illinois
219 South Dearborn Street, 5th Floor
Chicago, Illinois  60604
(312) 353-5300

STUART D. FULLERTON
Assistant United States Attorney

HELENE B. GREENWALD
Assistant United States Attorney

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

JURISDICTIONAL STATEMENT .......................................................................... 1

ISSUE PRESENTED FOR REVIEW ...................................................................... 1

STATEMENT OF THE CASE ................................................................................. 1

SUMMARY OF ARGUMENT ................................................................................. 7

ARGUMENT ........................................................................................................... 8

The District Court's Erroneous Application Of An Offense-Level Enhancement Under Guideline § 2K2.1(b)(5) Was Harmless And Defendant's Sentence Should Be Affirmed. ..................................................... 8

    A.    Standard of Review ......................................................................... 8

    B.    Analysis .......................................................................................... 10

        1.    The District Court's Application Of A Four-Level Enhancement Under Guideline § 2K2.1(b)(5) Was Erroneous. ....................................................................... 10

        2.    Because The Error Was Harmless, Defendant's Sentence Should be Affirmed. ............................................... 13

CONCLUSION ....................................................................................................... 22

# TABLE OF AUTHORITIES

## CASES

*Daniels v. United States*, 939 F.3d 898 (7th Cir. 2019) ....................... 13, 17, 20

*Greenlaw v. United States*, 554 U.S. 237 (2008) .............................................. 19

*Rosales-Mireless v. United States*, --U.S.--, 138 S. Ct. 1897 (2018)................. 21

*United States v. American Railway Express Co.*, 265 U.S. 425 (1924) ........... 19

*United States v. Asante*, 782 F.3d 639 (11th Cir. 2015)................................... 13

*United States v. Avila*, 634 F.3d 958 (7th Cir. 2011) ...................................... 19

*United States v. Cisneros*, 846 F.3d 972 (7th Cir. 2017).................................. 17

*United States v. Criscoe*, 793 F. App'x 986 (11th Cir. 2020)........................... 12

*United States v. De La Torre*, 940 F.3d 938 (7th Cir. 2019) .............................. 9

*United States v. Dridi*, 952 F.3d 893 (7th Cir. 2020)....................................... 21

*United States v. Fletcher*, 763 F.3d 711 (7th Cir. 2014) .................................. 17

*United States v. Francis*, 891 F.3d 888 (10th Cir. 2018) ................................ 12

*United States v. Fugate*, 964 F.3d 580 (6th Cir. 2020) .................................... 16

*United States v. Harris*, 791 F.3d 772 (7th Cir. 2015)...................................... 9

*United States v. Hasting*, 461 U.S. 499 (1983)................................................ 18

*United States v. Hemsher*, 893 F.3d 525 (8th Cir. 2018) ................................ 14

*United States v. Jackson*, 741 F.3d 861 (7th Cir. 2014) .............................. 14, 15

*United States v. Johns*, 732 F.3d 736 (7th Cir. 2013) ..................................... 16

*United States v. Jones*, 528 F. App'x 627 (7th Cir. 2013) .................... 14, 15, 16

*United States v. Juarez*, 626 F.3d 246 (5th Cir. 2010)..................................... 14

*United States v. Moody*, 915 F.3d 425 (7th Cir. 2019).............................. 12, 20

*United States v. Olano*, 507 U.S. 725 (1993) ...................................................... 9

*United States v. Shelton*, 905 F.3d 1026 (7th Cir. 2018) .................................. 9

*United States v. Volpendesto*, 746 F.3d 273 (7th Cir. 2014) ........................... 17

*United States v. Walker*, 771 F.3d 449 (8th Cir. 2014) ................................... 14

*United States v. White*, 582 F.3d 787 (7th Cir. 2009) ..................................... 17

## STATUTES

18 U.S.C. § 922(a)(1)(A) ...................................................................... 4

18 U.S.C. § 922(g)(1) .................................................................... 4, 14

18 U.S.C. § 922(g)(3) ........................................................................ 15

## SENTENCING GUIDELINES

U.S.S.G. § 2K2.1 ............................................................................... 12

U.S.S.G. § 2K2.1(b)(5) ................................................................*passim*

U.S.S.G. § 2K2.1(b)(6) ................................................................*passim*

## JURISDICTIONAL STATEMENT

Defendant-appellant's jurisdictional statement is complete and correct.

## ISSUE PRESENTED FOR REVIEW

Whether the district court erroneously applied the four-level sentencing enhancement under Guideline § 2K2.1(b)(5); and, if so, whether the error requires reversal of the 60-month prison sentence imposed.

## STATEMENT OF THE CASE

### Offense Conduct

Defendant, a four-time convicted felon, sold firearms and ammunition to a confidential source ("CS"), whom the defendant knew to be a felon. R. 98 at 2-5; COP Tr. 14-18; PSR 4-5, 9-11.[1] The sales, which took place during three separate transactions in February 2018, were captured on video and/or audio recordings. R. 98 at 2-5; COP Tr. 14-18; PSR 4-5, 9-11; R. 102 at 2.

In the first transaction, which occurred on February 5, 2018, defendant sold the CS a Taurus Model 85 .38 special revolver (the "Taurus firearm") and seventeen rounds of .38 caliber ammunition in exchange for $200. R. 98 at 2-3;

---

[1] This brief employs the following citation conventions: the original electronic record on appeal is cited as "R." followed by the district court docket number; the transcript of the change of plea hearing (R. 116) is cited as "COP Tr." followed by the page number; the transcript of the sentencing hearing (R. 117), which is included in defendant's appendix, is cited as "App." followed by the page number; the Presentence Investigation Report is cited as "PSR" followed by the page number; the Government's Version of the Offense, which is attached to the Presentence Investigation Report, is cited as "GVO" followed by the page number; and defendant's brief is cited as "Br." Followed by the page number.

COP Tr. 15, 18. During the transaction, the CS asked, "Ain't nothing on it is it, no bodies or nothing?" R. 98 at 3; COP Tr. 15, 18. Defendant responded, "Bro, I don't got shit clean. I'm sorry." R. 98 at 3; COP Tr. 15, 18. The CS asked, "You don't got nothing clean?" R. 98 at 3; COP Tr. 15, 18. Defendant confirmed he had "[n]othing clean." R. 98 at 3; COP Tr. 15, 18. The CS replied, "[s]o, its's something on the motherfucker. Don't worry about it bro, don't even worry about it." R. 98 at 3; COP Tr. 15, 18.

On February 7, 2018, defendant sold the CS an H&R Model 929 .22 caliber revolver with an obliterated serial number ("the H&R firearm") and eight live rounds of .22 caliber ammunition in exchange for $250. R. 98 at 3; COP Tr. 16, 18. During the transaction, defendant told the CS how to handle the H&R firearm, instructing him to "pull the hammer back a little bit." R. 98 at 3-4; COP Tr. 16, 18. Defendant also directed the CS to wipe down the H&R firearm. R. 98 at 4; COP Tr. 16, 18. In response to this direction, the CS asked: "[d]amn, you fired that motherfucker?" R. 98 at 4; COP Tr. 16, 18. Defendant replied, "I gotta make sure my shit still good for you bro. I don't sell no janky shit, bro. Just I'm getting my shit back. This my man's shit right here, so I gotta make sure everything is kosher. I don't play no games man. It's business." R. 98 at 4; COP Tr. 16-18.

On the morning of February 12, 2018, the CS met defendant to purchase a third firearm. R. 98 at 4; COP Tr. 17-18. This time, defendant sold the CS a

Rohm GMBH Model RG-10 .22 caliber revolver (the "Rohm firearm") and three live rounds of .22 caliber ammunition in exchange for $250. R. 98 at 4; COP Tr. 17-18. The CS asked defendant about defendant's friend who had a gun card, indicating that the CS wanted the defendant's friend to straw purchase firearms. R. 98 at 4; COP Tr. 17-18. Defendant advised that, if they straw purchased firearms, the defendant would have to charge the CS more money. R. 98 at 4; COP Tr. 17-18. The CS responded, "[i]t don't matter, I'm a felon, I can't get those motherfuckers." R. 98 at 4; COP Tr. 17-18. Defendant replied, "And, I'm a hitter. I got throwaways, everything I got, got murders on them motherfuckers damn near that's why I hurry up and get them bitches out my hand. If I don't need them. If I aint' at war with nobody, aint' no need to have them motherfuckers bro." R. 98 at 4; COP Tr. 17-18.

On February 27, 2018, the CS informed agents that defendant called the CS on February 26, 2018 to announce that he had four more firearms for sale. GVO 3. Agents instructed the CS to terminate communications with defendant because agents had learned that defendant had an outstanding state warrant. *Id*. Pursuant to ATF policy, agents are prohibited from conducting buys with individuals who have outstanding warrants. *Id*.

Following his arrest, defendant signed a written *Miranda* waiver and agreed to be interviewed by agents. GVO 3. During a recorded interview, defendant stated that a lot of people came to him looking for firearms and to

sell firearms, and that he received firearms in boxes from Indiana. PSR 5; GVO 3. He admitted that he sold approximately eleven firearms during the period of about June to August 2018. PSR 5; GVO 3.

### *Indictment and Guilty Plea*

On June 12, 2019, a grand jury returned a superseding indictment charging defendant with one count of unlicensed firearms dealing, in violation of 18 U.S.C. § 922(a)(1)(A) (Count 1), and three counts of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) (Counts 2-4). R. 44. On January 13, 2021, defendant pled guilty to Count Two, which charged the illegal possession by a felon of the Taurus firearm defendant sold to the CS on February 5, 2018. R. 97, 98. At his guilty plea, and in his written plea agreement, defendant also admitted to the additional facts set forth above regarding his sale of the H&R firearm and the Rohm firearm; and he stipulated that this additional conduct constituted relevant conduct under Sentencing Guideline § 1B1.3. R. 98 at 3-5; COP Tr. 16-18.

### *Presentence Investigation Report*

Following the guilty plea, the United States Probation Office prepared a Presentence Investigation Report ("PSR"), which calculated a total offense level of 23, criminal history category IV, and resulting advisory Guideline range of 70-87 months' imprisonment. PSR 5-6, 9-12, 20. The total offense level was based on, among other things, an enhancement under Guideline

§ 2K2.1(b)(5), which provides for a four-level increase if the defendant engaged in the trafficking of firearms.[2] PSR 6. The PSR determined that the requirements for that enhancement were met because: (i) defendant "transferred . . . two or more firearms to another individual"; and (ii) "knew or had reason to believe" this transfer to the CS "would result in the . . . transfer . . . of a firearm to an individual . . . whose possession or receipt of the firearm would be unlawful; or . . . who intended to use or dispose of the firearm unlawfully[,]" as required by Guideline § 2K2.1(b)(5), n. 13 (A). PSR 6. In particular, the PSR found that the enhancement's knowledge (or "reason to believe") requirement was met because the CS told defendant the CS was a felon during the February 12th sale of the Rohm firearm. PSR 6.

Defendant objected to application of the § 2K2.1(b)(5) enhancement in the plea agreement (R. 98 at 7), in his sentencing memorandum (R. 104 at 1), and at the sentencing hearing (App. 6). He argued at sentencing that, while the evidence was sufficient to show defendant "transferred . . . two more more firearms to another individual[,]" as required by the commentary to § 2K2.1(b)(5), *see id.* n. 13(A)(i), the evidence was insufficient to support the

---

[2] The PSR included increases to the offense level based on the following additional enhancements as well: (i) a four-level increase under § 2K2.1(b)(1)(B) because the offense of conviction and relevant conduct involved at least 8 but not more than 24 firearms; and (ii) a four-level increase under § 2K2.1(b)(4)(B), because one of the firearms had an obliterated serial number. PSR 6.

enhancement because the CS did not tell defendant he was a felon until the third firearm sale and thus "there's not sufficient evidence to show that Mr. Harvey knew that he was selling to a prohibited person for at least two of the firearms or that they were going to be used for any illegal purpose." App. 6.

*Sentencing*

The district court held the sentencing proceeding on June 9, 2021. R. 105. The court agreed with the PSR's calculation of the total offense level 23 but found a criminal history category III (rather than IV, as in the PSR), and a resulting advisory Guideline range of 57-71 months. App. 4-9.

With respect to defendant's objection to application of the Guideline § 2K2.1(b)(5) enhancement, the court noted the audio-recording of the CS informing the defendant that the CS was a felon, and the prosecutor elaborated on the evidence supporting the enhancement:

> The specific recording that the Court is referring to occurred during the February 12, 2018, gun deal where the cooperating source stated, 'It don't matter, I'm a felon, I can't get those MF'ers.' And so we believe that the defendant was on notice that he was selling to a prohibited individual.

App. 6-7. In light of this evidence, the district court found that "defendant was aware" that the CS was a felon and ruled that "the four-level enhancement will be applied based upon the evidence by a preponderance." *Id.* Neither party nor the probation officer brought to the court's attention the additional provision in the commentary to § 2K2.1(b)(5) requiring that the firearm recipient's

6

felony—about which defendant had knowledge—was "for a crime of violence, [or] a controlled substance offense[.]" U.S.S.G. § 2K2.1(b)(5), n. 13(B).

Following its determination that the advisory Guideline range was 57-71 months' imprisonment, the district court heard from the government which sought a sentence at the high end of the Guideline range, defense counsel who advocated for a below-Guideline prison sentence of 30 months, and the defendant who apologized for his conduct. App. 10-15; *see also* R. 104. The court—after considering the § 3553 sentencing factors—imposed a Guideline sentence of 60 months' imprisonment. App. 17. In explaining the basis for the sentence, the court emphasized as aggravating factors: the seriousness of the crime of "selling the firearms to get [them] onto the streets[,]" including "to somebody who you know is a felon"; and the need for general deterrence as the city "struggle[es] to control this gun violence[.]" App. 15-17. On the other hand, the court noted significant mitigating factors including defendant's "terrible childhood[,]" and his expressions of remorse. App. 16-17.

## SUMMARY OF ARGUMENT

The district court erroneously imposed the four-level enhancement under Guideline § 2K2.1(b)(5) because the evidence failed to show that defendant had reason to believe that the CS's prior felony conviction was for a crime of violence or controlled substance offense, as required by the commentary to that provision. However, the error was harmless. Under this

Court's precedents, the district court's finding that defendant had reason to believe the CS had a prior felony conviction was sufficient to support an identical four-level enhancement under Guideline § 2K2.1(b)(6)(B), which applies if defendant "transferred any firearm . . . with . . . reason to believe that it would be used or possessed in connection with another felony offense[.]" Accordingly, as correctly calculated, defendant's advisory Guideline range remained the same as that calculated at sentencing. Moreover, because nothing in the record indicates that the court would have chosen a different sentence within that guideline range absent the error, defendant suffered no prejudice from the court's application of the four-level increase pursuant to subsection (b)(5), rather than subsection (b)(6)(B), and defendant's sentence should be affirmed.

## ARGUMENT

**The District Court's Erroneous Application Of An Offense-Level Enhancement Under Guideline § 2K2.1(b)(5) Was Harmless And Defendant's Sentence Should Be Affirmed.**

### A. Standard of Review

Generally, this Court "review[s] whether a district court's factual determinations adequately support a sentencing enhancement's application de novo" and "those factual determinations for clear error"; and it reviews de novo alleged procedural errors, such as improperly calculating the advisory Sentencing Guidelines range. *United States v. Lovies*, 16 F.4th 493, 504 (7th

8

Cir. 2021); *United States v. Shelton*, 905 F.3d 1026, 1031 (7th Cir. 2018). "[E]rrors in calculating the advisory guideline range are subject to harmless error analysis." *Id.* (citation and quotations omitted).

However, when a defendant objects to the district court's application of a guideline enhancement on a basis different from that raised on appeal, the defendant forfeits the challenge raised for the first time on appeal and the challenge is reviewed for plain error only. *United States v. De La Torre*, 940 F.3d 938, 946 (7th Cir. 2019); *United States v. Harris*, 791 F.3d 772, 779 (7th Cir. 2015). On plain error review, this Court will reverse only if it finds an obvious or clear error that affected the defendant's substantial rights and "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 736 (1993) (citations and quotations omitted); *De La Torre*, 940 F.3d at 946.

Here, defendant objected in the district court to the application of the enhancement under Guideline § 2K2.1(b)(5). However, he argued only that the evidence was insufficient because the audio-recording showed that he learned the CS was a felon at the time he transferred the third and final firearm, and the evidence failed to show defendant had such knowledge at the time he sold the other two guns. *See* App. 6 ("there's not sufficient evidence to show that [defendant] knew that he was selling to a prohibited person for at least two of the firearms . . ."). In district court, defendant did not raise the argument, now

9

made on appeal, that the evidence was insufficient to meet the definitional requirement set forth in note 13(B) to the commentary for Guideline § 2K2.1(b)(5). Thus, defendant forfeited the argument he raises for the first time on appeal, and the challenge is subject to plain error review.

## B. Analysis

Defendant argues that the district court erred by imposing the four-level enhancement under Guideline § 2K2.1(b)(5) because, while the evidence showed that defendant had reason to believe the CS was a felon, it did not show that the defendant had reason to believe the CS's felony conviction was for a crime of violence or a drug offense, as required by the commentary to that Guideline section. The government concedes that, regardless of whether the standard of review is de novo or plain error, the district court committed cognizable error. However, as discussed below, that error was harmless and thus defendant's sentence should be affirmed.

### 1. The District Court's Application Of A Four-Level Enhancement Under Guideline § 2K2.1(b)(5) Was Erroneous.

As defendant correctly contends, the district court erred by applying the four-level enhancement under Guideline § 2K2.1(b)(5) in the calculation of defendant's total offense level.

Guideline § 2K2.1(b)(5) provides for a four-level enhancement "[i]f the defendant engaged in the trafficking of firearms[.]" Application Note 13, which applies to this Guideline subsection, provides in pertinent part:

(A) In General.—Subsection (b)(5) applies, regardless of whether anything of value was exchanged, if the defendant—

 (i) transported, transferred, or otherwise disposed of two or more firearms to another individual, . . ; and

 (ii) knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual—

  (I) whose possession or receipt of the firearm would be unlawful . . . .

(B) Definitions.—For purposes of this subsection:

'Individual whose possession or receipt of the firearm would be unlawful' means an individual who (i) has a prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence . . . . 'Crime of violence' and 'controlled substance offense' have the meaning given those terms in § 4B1.2 (Definitions of Terms Used in Section 4B1.1).

U.S.S.G. § 2K2.1(b)(5), n. 13(A), (B).

In sentencing defendant, the parties, probation officer and the court focused on the part of Application Note 13 set forth under subheading A, which requires that defendant "knew or had reason to believe" that the transfer of firearms "would result in the . . . transfer . . . of a firearm to an individual . . . whose possession of the firearm would be unlawful . . . ." However, they failed to take notice of subheading B, which set forth the definition of an "[i]ndividual whose possession or receipt of the firearm would be unlawful"; and they made

11

no mention of the requirement set forth in subheading B that defendant have reason to believe the CS's felony conviction was for a crime of violence or controlled substance offense. No one, including defendant, brought this requirement to the district court's attention. The court thus made no finding as to this requirement; and, as defendant points out, the record does not support a finding of such knowledge or belief on the part of the defendant.

Accordingly, the district court's determination that the four-level enhancement under Guideline § 2K2.1(b)(5) applied, and its inclusion of that enhancement in its calculation of the advisory Guideline range, was erroneous—under both de novo and plain error review. *See United States v. Moody*, 915 F.3d 425, 427-30 (7th Cir. 2019) (plain error to impose § 2K2.1(b)(5) enhancement because "government's evidence that Moody sold [stolen] guns to 'different people who heard about it' is an insufficient basis for concluding that Moody sold guns to 2 or more people who satisfied the narrow criteria of U.S.S.G. § 2K2.1 n.13(A)") (quotations in original); *see also United States v. Criscoe*, 793 F. App'x 986, 988 (11th Cir. 2020) (possession of a firearm by a drug user is not unlawful possession for purposes of § 2K2.1(b)(5) because it does not satisfy "the narrow criteria" set forth in the commentary definition); *United States v. Francis*, 891 F.3d 888, 897-98 (10th Cir. 2018) (pursuant to commentary, § 2K2.1(b)(5) applies only to "limited categories of unlawful possession" listed and requires evidence of defendant's awareness that the

transferee had a conviction for one of the specifically listed offenses); *United States v. Asante*, 782 F.3d 639, 643-44 (11th Cir. 2015) (denying § 2K2.1(b)(5) enhancement because Government failed to present evidence that defendant knew that his conduct would result in a firearm being transferred to an individual convicted of the narrowly defined offenses listed in commentary).

**2.    Because The Error Was Harmless, Defendant's Sentence Should be Affirmed.**

Although the district court erred, reversal and resentencing are unwarranted because the error was harmless (or, under plain error review, did not affect defendant's substantial rights). While the pertinent factual finding by the court—i.e., that defendant had reason to believe the CS was a felon— was insufficient to warrant application of the four-level enhancement under Guideline § 2K2.1(b)(5), that very finding was sufficient to warrant application of a four-level enhancement under Guideline § 2K2.1(b)(6)(B). Thus, as correctly calculated, defendant's guideline range remained the same as that calculated erroneously by the district court and the court's error necessarily is harmless. *See Daniels v. United States*, 939 F.3d 898, 903 (7th Cir. 2019) ("We have long held that Guidelines-calculation errors that don't affect a defendant's sentencing range are harmless as a matter of law").

Guideline § 2K2.1(b)(6)(B) provides that a defendant's offense level shall be increased four levels if he "possessed or transferred any firearm or

ammunition with knowledge, intent or reason to believe that it would be used or possessed in connection with another felony offense." Application Note 14, which governs this subsection, provides in pertinent part:

> 'Another felony offense' . . . for purposes of subsection (b)(6)(B) means any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained.

U.S.S.G. § 2K2.1(b)(6), n. 14(C) (2018 ed.).

This Court has held that Application Note 14 "excludes from the definition of 'another felony offense' only the possession or trafficking offense that serves as the basis for the defendant's conviction[,]" and does not exclude a possession (or trafficking) offense by the person to whom defendant transferred the firearm. *United States v. Jackson*, 741 F.3d 861, 863 (7th Cir. 2014); *accord United States v. Hemsher*, 893 F.3d 525, 534-35 (8th Cir. 2018); *United States v. Walker*, 771 F.3d 449, 451-52 (8th Cir. 2014); *United States v. Juarez*, 626 F.3d 246, 254-55 (5th Cir. 2010). Thus, this Court has "concluded that the [§ 2K2.1(b)(6)(B)] enhancement applies . . . when a defendant guilty of being a felon-in-possession has transferred the firearm to another prohibited person[,]" including a person defendant has reason to believe is a felon and thus prohibited from firearm possession under 18 U.S.C. § 922(g)(1). *Jackson*, 741 F.3d at 863; *see also United States v. Jones*, 528 F. App'x 627, 631-32 (7th Cir. 2013) (nonprecedential decision).

In *Jackson*, 741 F.3d at 862, the defendant, who was convicted of being a felon-in-possession, transferred the firearm to someone he knew to be an illegal user of crack cocaine and heroin, and thus to someone whose possession of the firearm was prohibited under 18 U.S.C. § 922(g)(3). Based on its interpretation of § 2K2.1(b)(6)(B) as reaching possession or trafficking offenses committed by the person to whom defendant transfers the firearm, this Court held that the four-level enhancement applied, explaining: "[b]y selling the pistol to Dircks, whom he knew to be an unlawful user of controlled substances and thus someone who could not legally possess a firearm, [defendant] transferred the pistol with knowledge or reason to believe that the gun would be used to commit another felony offense—Dircks's illegal possession of the same gun." *Jackson*, 741 F.3d at 863.

Similarly, in *Jones*, 528 F. App'x at 631-32, a nonprecedential opinion cited approvingly and relied upon in *Jackson*, this Court held that by selling a firearm to someone defendant believed to be a felon, defendant transferred the firearm with reason to believe the firearm would be used to commit "another felony offense"—namely, the recipient's illegal possession of the gun as a felon.

Under this precedent, the district court's specific finding—i.e., that defendant had reason to believe the CS was a felon and thus transferred the firearm to a person whose possession of it would be unlawful because he would be a felon-in-possession—established the applicability of the four-level

enhancement under Guideline § 2K2.1(b)(6)(B) because defendant had reason to believe the firearm he sold to the CS would be used to commit another felony offense—namely the CS's illegal possession of the firearm as a felon. No other factual finding was required to trigger—and indeed require—application of this enhancement for a correct calculation of defendant's total offense level, and thus advisory guideline range.[3] Moreover, the court's finding was supported by overwhelming evidence (i.e., the audio-recording), and defendant did not contest at sentencing (or now on appeal) that at the time of the third firearm transaction defendant had knowledge of the CS' felony conviction.

Application of the four-level enhancement under Guideline § 2K2.1(b)(6)(B) yields a total offense level 23—the same offense level calculated by the court at sentencing, albeit by erroneously applying § 2K2.1(b)(5). Therefore, application of the four-level enhancement under

---

[3] In *Jones*, 528 F. App'x at 632, this Court expressly recognized the factual overlap between subsections (b)(5) and (b)(6)(B): "[u]nder the understanding of § 2K2.1(b)(6) we adopt today, a defendant who . . . sold just one gun and thus did not qualify for an adjustment under § 2K2.1(b)(5), nonetheless would qualify for precisely the same adjustment under § 2K2.1(b)(6)." *See also United States v. Fugate*, 964 F.3d 580, 587 (6th Cir. 2020) (observing that "the second clause of § 2K2.1(b)(6)(B) describes conduct that falls within Application Note 13(A)'s description of firearms trafficking—possessing or transferring a firearm to someone who cannot lawfully possess it or who will use it to commit a crime" and thus "the second clause of § 2K2.1(b)(6)(B) is already covered by § 2K2.1(b)(5)"); *cf. United States v. Johns*, 732 F.3d 736, 740 (finding impermissible double counting because "district court applied both the trafficking enhancement [under § 2K2.1(b)(5)] and the other felony enhancement [under § 2K2.1(b)(6)(B)] based on the same conduct—Johns's transfer of the firearms to the CI with knowledge that the CI was going to resell the firearms").

§ 2K2.1(b)(6)(B) results in the same advisory guideline range of 51-71 months' imprisonment pursuant to which defendant was sentenced.

As this Court repeatedly has held, "Guidelines-calculation errors that don't affect defendant's sentencing range are harmless as a matter of law." *Daniels*, 939 F.3d at 903 (harmless error where career offender misdesignation did not affect Guideline range); *see, e.g., United States v. Cisneros*, 846 F.3d 972, 979 (7th Cir. 2017) ("need not address" the defendant's challenges to drug-weight determinations, because even if he prevailed on those challenges "he would not fall below the five kilogram threshold and the Guidelines range would be the same"); *United States v. Volpendesto*, 746 F.3d 273, 297 n.9 (7th Cir. 2014) (any error in misapplying the career-offender Guideline is harmless "because an offense level of 42 results in a recommended range of 360 months to life regardless of the offender's criminal history category"); *United States v. Fletcher*, 763 F.3d 711, 718 (7th Cir. 2014) (when the Guideline range was limited to the statutory maximum no matter what, "any error in calculating the range for Count I could not have affected the district court's choice of a sentence and thus any possible error was harmless"); *United States v. White*, 582 F.3d 787, 799 (7th Cir. 2009) ("any *Kimbrough* error that occurred in this case was harmless" because "even if the district court had *ignored* the crack cocaine attributable to Herbert, his guidelines range would remain unchanged") (emphasis in original).

17

Here, unlike the above-cited cases, finding the error harmless requires applying a four-level increase under a different subsection of the Guideline provision upon which the district court relied. However, because no additional fact-findings are required to support § 2K2.1(b)(6)(B)'s application, this distinction between the instant case and these other harmless error cases is insignificant. Just as in these other cases, remand would result in precisely the same guideline range without any additional fact-finding by the court, and thus be a waste of judicial resources—the very resource sought to be preserved by the harmless-error doctrine. *See United States v. Hasting*, 461 U.S. 499, 509 (1983) (goal of harmless-error doctrine is "to conserve judicial resources by enabling appellate courts to cleanse the judicial process of prejudicial error without becoming mired in harmless error") (citation and quotations omitted).

Moreover, under these circumstances, there is no authority prohibiting— or even counseling against—an affirmance based on harmless error. Because no additional factual findings are required to support application of Guideline § 2K2.1(b)(6)(B), the case law, cited by defendant, that prohibits the government from expanding the record by offering additional evidence to support an enhancement on remand is inapposite. *See* Br. 12 n. 2. Additionally, the plea agreement itself indicates the parties express acknowledgment that Guideline calculations made by the government in connection with the plea agreement are "preliminary" and "non-binding[,]" that "further review of the

18

facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case[,]" and that "defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations[.]" R. 98 at 9-10.

Nor is harmless error analysis barred by *Greenlaw v. United States*, 554 U.S. 237 (2008), which requires that the government appeal (or cross-appeal) if it seeks a sentence increase. The government does not seek to increase defendant's sentence but rather to support the Guideline range calculated, and sentence imposed, by the district court. *See United States v. Avila*, 634 F.3d 958, 961 (7th Cir. 2011) (government had "no reason to cross-appeal" and *Greenlaw* did not apply when government did not seek a different sentence and called for same offense level found by district court). In fact, *Greenlaw* supports a finding of harmless error in this case, as the Supreme Court noted that "[a]n appellee or respondent may defend the judgment below on a ground not earlier aired." 554 U.S. at 250 n. 5; *see also United States v. American Railway Express Co.*, 265 U.S. 425, 435 (1924) ("appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it").

Further, the government's failure to raise the § 5K2.1(b)(6)(B) enhancement at sentencing did not constitute waiver. Nothing in the record

19

indicates the government "intentionally relinquished a known right[,]" as required for a finding of waiver. *Moody*, 915 F.3d at 429 ("[t]he touchstone of a waiver is a knowing and intentional decision") (citations and quotations omitted). To the contrary, the record demonstrates that the government sought to enhance defendant's offense level based on his knowledge that the CS was a felon, and thus had no strategic reason to forego reliance on subsection (6)(B) which supports a four-level enhancement on that basis. *Cf. Moody*, 915 F.3d at 429 ("[i]f the government cannot proffer any strategic justification for defendant's omission, we will presume an inadvertent forfeiture" rather than an intentional waiver). Far from demonstrating a "knowing and intentional decision" to forego reliance on § 5K2.1(b)(6)(B), the record strongly indicates that the government's failure to invoke that subsection was the result of oversight, mistake or misunderstanding. *Moody*, 915 F.3d at 429.

Finally, a finding of harmless error is warranted because, in addition to the error having no effect on the guideline range, the error had no impact on the choice of the sentence (within the range) imposed. *See Daniels*, 939 F.3d at 904 (allowing for possibility that, "*if* the district court had explicitly tied the sentence to the career-offender misdesignation, the error would have been harmful[,]" even though the guideline range was unaffected by the error) (emphasis in original). The district court expressly based the 60-month Guideline prison sentence on the seriousness of the offense (including

defendant's selling the firearm to a felon), the need for general deterrence, and the mitigating factors of defendant's difficult childhood and remorse. *See* App. 14-17. None of these considerations—and the facts underlying them—are changed or affected in any way by the court's erroneous reliance on subsection (b)(5) rather than (b)(6)(B). Because the error had no impact on the court's sentencing rationale, the record demonstrates that upon a remand, the court—when presented with the same guideline range as at the original sentencing—would impose the identical sentence within that range. Indeed, given the court's rationale, the record indicates no basis—premised on the error—for the court to do otherwise.[4]

---

[4] Under plain error review, the government's argument in support of affirmance is even stronger as the burden is upon defendant to show "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *United States v. Dridi*, 952 F.3d 893, 899 (7th Cir. 2020) (citations and quotations omitted). For reasons set forth in the text, this is a burden that defendant cannot meet. Nor can defendant establish that the error seriously affected the fairness, integrity and public reputation of judicial proceedings. While the Supreme Court has held that plain errors in Guideline calculations that affect substantial rights typically affect the legitimacy of the courts and call for exercise of an appellate court's discretion to vacate the sentence, *see Rosales-Mireless v. United States*, --U.S.--, 138 S. Ct. 1897, 1908 (2018), the record here makes clear that the guideline range, as calculated at sentencing, is the range supported by a "proper application" of the Guidelines, thereby ensuring the fairness of sentencing among defendants and with respect to this defendant in particular.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court affirm defendant's sentence.

Respectfully submitted.

JOHN R. LAUSCH, JR.
United States Attorney

STUART D. FULLERTON
Assistant United States Attorney

/s/ *Helene B. Greenwald*
HELENE B. GREENWALD
Assistant United States Attorney

# RULE 32 CERTIFICATION

I hereby certify that this brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5), 32(a)(6), and Circuit Rule 32(b), because it has been prepared using the Microsoft Office Word proportionally-spaced typeface of Century Schoolbook with 13-point font in the text and 12-point font in the footnotes.

Respectfully submitted.

JOHN R. LAUSCH, JR.
United States Attorney

By:        */s/ [Helene B. Greenwald*
HELENE B. GREENWALD
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2022, I electronically filed the foregoing Brief of the United States with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully submitted.

By: /s/ *Helene B. Greenwald*
HELENE B. GREENWALD
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois